Robert E. COLVILLE, Appellant

v.

**ALLEGHENY COUNTY
RETIREMENT
BOARD.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2005.
Decided Nov. 28, 2005.

Michael C. Colville, Pittsburgh, for appellant.

Mary C. Barkman, Pittsburgh, for appellee.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge FRIEDMAN.

Robert E. Colville (Colville) appeals from the February 15, 2005, order of the Court of Common Pleas of Allegheny County (trial court), which confirmed as final a July 29, 2003, trial court order denying Colville's motion for summary judgment and affirming the decision of the Retirement Board of Allegheny County (RBAC)[1] to deny Colville's request for increased retirement benefits.

From January 1976 until January 1998, Colville served as the elected District Attorney of Allegheny County (County) and participated in the County's retirement system. Pursuant to then existing state law, retirement allowances were computed based on the individual participant's monthly salary, up to a statutory cap of $4,333.33 per month. Section 1712(a) of the Second Class County Code (Code), 16 P.S. § 4712(a). Each month prior to his retirement, Colville contributed to the County retirement fund an amount computed on a percentage of the monthly compensation paid to him by the County, subject to the statutory cap. Section 1708(a) of the Code, 16 P.S. § 4708(a). Colville's monthly contributions were matched by the County. Section 1709 of the Code, 16 P.S. § 4709. Colville retired in January 1998 and began receiving his monthly retirement allowance.

On October 30, 2000, the legislature adopted Act No. 85 of 2000 (Act 85), which amended section 1712(a) of the Code by removing the statutory cap and permitting certain participants in the County employees' retirement system to compute their retirement allowance based on their actual monthly compensation. Act 85 became effective as of December 31, 1999, and section 1712(a) of the Code currently provides, in relevant part:

No retirement allowance shall be computed on a monthly compensation in excess of four thousand three hundred thirty-three dollars and thirty-three cents ($4,333.33) (referred to in this subsection as "excess compensation") unless the employe and the county have made contributions on all excess compensation received by the employe during the five-

---

1. The RBAC is established under, and empowered by, the Second Class County Code (Code), Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §§ 3101–6302, to oversee the administration of the retirement system fund for Allegheny County employees. *See* Sections 1702–1706 of the Code, 16 P.S. §§ 4702–4706.

year period preceding the employe's retirement: *Provided, That the required contribution is paid into the retirement system within ninety (90) days of the date of retirement. An employe who retires within five (5) years of the effective date of the compensation cap removal may elect to satisfy the contribution requirement by making a lump sum contribution* that is calculated by applying the applicable contribution percentage rate to all excess compensation received by the employe during the prior five-year period on which contributions were not made. Within ninety (90) days of such contribution by an employe, contributions shall also be made by the county in an amount equal to the amount contributed by the employe. The effective date of the cap removal is December 31, 1999.

16 P.S. § 4712(a) (emphasis added).

After Colville became aware of the amendment, he contacted the RBAC and attempted to make a lump sum contribution to the retirement fund under Act 85 for the purpose of recalculating the amount of his retirement allowance based on his actual salary. In February 2001, the RBAC denied Colville's request, determining that Act 85 did not apply to persons who retired prior to Act 85's effective date.

Colville appealed this decision, and the RBAC held an appeal hearing on April 27, 2001, pursuant to the Local Agency Law.[2] Colville testified at the hearing and submitted a memorandum to the RBAC setting forth certain facts and legal arguments in support of his position. A transcript of the hearing, including all exhibits, was made and filed as the certified copy of the record. Subsequently, the RBAC denied Colville's appeal, again holding that Act 85 did not apply to persons who retired prior to its enactment.

Colville did not file a statutory appeal of the RBAC's adjudication, as provided by the Local Agency Law, but he filed a Praecipe for Writ of Summons in Civil Action and, subsequently, filed a Complaint for Declaratory Relief (Complaint) in the trial court, seeking a declaratory judgment that Act 85 applies to persons in his situation, who retired within the five years *prior to* the December 31, 1999, effective date.[3]

The RBAC filed preliminary objections to Colville's Complaint asserting that it was barred by the applicable statute of limitations and Colville's failure to exhaust his administrative remedies. Following argument, the trial court granted the RBAC's preliminary objections to the extent that Colville sought declaratory relief. However, the trial court found the Praecipe for Writ of Summons to be a timely "appeal" of the RBAC decision; the trial court stressed that it would not entertain *de novo* review or action for declaratory relief, but would provide only limited review of the RBAC's decision in accordance with the Local Agency Law. A certified copy of the record from the April 27, 2001, RBAC hearing was submitted to the trial court for appellate review.

Nonetheless, on April 14, 2003, Colville filed a Motion for Summary Judgment to resolve the legal question of what is the plain meaning or the proper interpretation of section 1712(a) of the Code. On July 29, 2003, following argument on Colville's Motion for Summary Judgment/review of the

---

**2.** 2 Pa.C.S. §§ 551–555, 751–754.

**3.** Because Colville is a judge in the Court of Common Pleas of Allegheny County, a specially presiding out-of-county judge was appointed to hear the case.

RBAC adjudication, the trial court entered an order denying Colville's Motion for Summary Judgment and affirming the RBAC's adjudication that Colville was ineligible for the cap removal as provided in Act 85 because he applied for and began receiving a retirement allowance prior to Act 85's effective date. The trial court also determined that there had not been any violation of constitutional rights or any abuse of discretion or error of law in the record of the proceedings before the RBAC and that the RBAC's adjudication was supported by substantial evidence. Although earlier, the trial court explicitly stated that it was accepting Colville's action strictly as an appeal of the RBAC's decision, the language of the trial court's July 29, 2003, order did not clearly indicate that it was a final decision. Moreover, in a lengthy footnote to the July 29, 2003, order, the trial court added that Colville's counsel had raised an issue of concern; specifically, that two other retirees allegedly similarly situated to Colville had received the benefit of the statutory cap removal. The trial court wrote that, as a matter of fundamental fairness, it would entertain an application for reconsideration and remand to the RBAC on this narrow basis if the factual foundations were, indeed, analogous.

Colville did not file an appeal of the July 29, 2003, order at this point, but on August 12, 2003, Colville filed a Motion for Remand seeking further proceedings before the RBAC, including permission to engage in discovery regarding whether individuals similarly situated to Colville were determined by the RBAC to be eligible for statutory cap removal under Act 85. Counsel for the RBAC filed a response, challenging the trial court's authority under the Local Agency Law to remand the case to the RBAC and, further, maintaining that the Motion for Remand must be denied because there were no cases factually analogous to Colville's.

On September 11, 2003, the trial court issued an order granting Colville's Motion for Remand and allowing for discovery prior to the remanded hearing. Counsel for the RBAC petitioned for, and ultimately received, permission to appeal the trial court's September 11, 2003, interlocutory order.[4] By opinion and order dated June 18, 2004, this court reversed, holding that the trial court lacked jurisdiction and/or authority under the Local Agency Law to remand the case to the RBAC for further proceedings, including discovery, after the trial court had affirmed the RBAC's adjudication on the merits. *Retirement Board of Allegheny County v. Colville*, 852 A.2d 445 (Pa.Cmwlth.2004). We further noted that remand was particularly unwarranted due to the lack of a remedy, concluding that, where the trial court had affirmed the RBAC's determination that Colville was ineligible for enhanced benefits *as a matter of law*, the only available remedy was to stop illegal payments to other retirees. *Id.*

Following our decision in *Colville*, Colville wrote to the trial court requesting that it finalize the July 29, 2003, order in this matter so that Colville could appeal to the Commonwealth Court. Colville received no response; nevertheless, on July 19, 2004, Colville filed an appeal from the trial court's July 29, 2003, order. In doing so, Colville specifically characterized his appeal as premature and explained that he filed the appeal "in an abundance of cau-

---

4. The trial court issued an opinion in support of its September 11, 2003, order, repeating its earlier conclusion that Colville was ineligible for cap removal under Act 85 *as a matter of law* but stating that it felt compelled to grant Colville's request for a remand as a matter of "fundamental fairness."

tion, in the event that the Commonwealth Court's June 18, 2004 Order and Opinion is ultimately deemed to have rendered the trial court's July 29, 200[3] Order denying Colville's Motion for Summary Judgment a final appealable Order." (O.R., July 19, 2004, Notice of Appeal at n. 1.)

■ By order dated October 19, 2004, a single judge of this court, without elaboration, quashed Colville's appeal, and, by letter dated February 8, 2005, Colville renewed his request to the trial court to issue a final order in the matter. On February 15, 2005, the trial court, "in consideration of the request of counsel for Robert E. Colville ... as well as the order of the Commonwealth Court ... which quashed the appeal of Robert E. Colville," issued an order confirming its July 29, 2003, order as a final order. (R.R. at 57.) On March 1, 2005, Colville filed the present appeal from the February 15, 2005, order and the July 29, 2003, order it confirmed.[5]

■ As a threshold matter, we must address the RBAC's contention that Colville's appeal must be quashed as untimely because it was filed outside the statutory period for appealing from the July 29, 2003, order.[6] Although the RBAC's argument is not without merit, we will not quash the appeal under the present circumstances.

■ Pa. R.A.P. 903 requires that a notice of appeal be filed within thirty days after the entry of the order from which the appeal is taken. Here, Colville filed a March 1, 2005, notice of appeal from the trial court's February 15, 2005, order, which, in turn, purportedly confirmed the July 29, 2003, order as final. However, the RBAC asserts that the July 29, 2003, order was final and appealable *when issued* because it disposed of all the issues raised in Colville's Local Agency Law appeal. *See* 2 Pa.C.S. § 754. In support of this argument, the RBAC cites Pa. R.C.P. No. 227.1(g), which prohibits the filing of post-trial motions (in this case, the motion for reconsideration/remand) in statutory appeals from the final adjudication of a local agency such as the RBAC. Indeed, the explanatory comment to 227.1(g) states, "The decision of the court in all such cases will be a final, appealable order."[7] The RBAC further contends that the trial court's September 11, 2003, order granting Colville's motion for remand did not toll the thirty-day appeal period because that order clearly was improper under *Colville* and/or was ancillary[8] to the July 29, 2003, final order.

---

5. Where, as here, a complete record is developed before the local agency, this court's scope of review is limited to determining whether constitutional rights were violated, whether there was an error of law or violation of agency procedure and whether necessary findings of fact are supported by substantial evidence. *See Fetter v. Jersey Shore Area School District*, 833 A.2d 332 (Pa.Cmwlth. 2003); *see also*, 2 Pa.C.S. § 754(b).

6. On April 27, 2005, the RBAC filed a motion to quash Colville's March 1, 2005, appeal as untimely.

7. Moreover, orders following adjudications in statutory appeals are appealable without the necessity of a formal entry of judgment. *Ea-*

*chus v. Chester County Tax Claim Bureau*, 148 Pa.Cmwlth. 625, 612 A.2d 586 (1992), *appeal denied*, 534 Pa. 643, 626 A.2d 1161 (1993). Subsequent entry of judgment where judgment need not be entered is a nullity, and it does not create a new time period for appeal. *United States National Bank in Johnstown v. Johnson*, 506 Pa. 622, 487 A.2d 809 (1985).

8. *See 220 Partnership v. City of Philadelphia*, 129 Pa.Cmwlth. 300, 565 A.2d 518 (1989), *appeal denied sub nom.* 525 Pa. 652, 581 A.2d 577 (1990) (holding that proceedings ancillary to a final order do not toll the time period within which an appeal must be taken).

However, in *Appeal of the Borough of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990), our supreme court recognized the inherent power of courts to regulate their own practice and, notwithstanding Pa. R.C.P. No. 227.1(g), the court held that in statutory appeals, trial courts may "invite" exceptions or post-trial relief if they choose to do so. Here, the trial court expressly invited Colville to file a motion for reconsideration and remand, which the trial court then considered and granted on September 11, 2003. In doing so, the trial court indicated its intent to retain jurisdiction because of the possibility that additional proceedings might be needed to resolve all the issues involved in the case. It is true that our court subsequently ruled that the trial court lacked authority to invite or grant the remand. However, because Colville reasonably relied on the trial court's direction in deciding not to file an appeal of the July 29, 2003, order, we conclude that it would be inequitable to deprive Colville of his appellate rights because of the trial court's error in providing that direction.[9] *See Jackson ex rel. Sanders v. Hendrick*, 560 Pa. 468, 746 A.2d 574 (2000).

Having determined that Colville's appeal is timely, we next consider whether Colville is entitled to be treated as a "cap-removed" participant in the retirement system pursuant to Act 85's amendment of section 1712(a) of the Code.

■ Colville argues that the trial court erred in concluding that Act 85 does not apply to employees who, like Colville, retired within five years prior to the Act's effective date. Colville asserts that he retired "within five years of" of December 31, 1999, the effective date of Act 85 and, therefore, under the plain meaning of the statute, he must be given the opportunity to contribute as a cap removed participant. *See* section 1921(b) of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1921(b). According to Colville, the analysis should end there.

Alternatively, Colville argues that, even if the statute is ambiguous and interpretation of its language is required, the accepted principles of statutory construction, codified at section 1921(c) of the SCA, 1 Pa.C.S. § 1921(c), support his position, and do not create a result that is absurd, unreasonable or impossible to execute. Section 1922 of the SCA, 1 Pa.C.S. § 1922. Colville points out that the legislature could have explicitly indicated its intent to limit application of the cap removal amendment to employees retiring within five years *after* the effective date and to exclude individuals who retired *prior* to that date, but did not do so. In fact, Colville observes that the legislature did use such

---

9. Colville also asserts that the July 29, 2003, order was not final because it simply denied summary judgment in his favor. *See Thorn v. Newman*, 113 Pa.Cmwlth. 642, 538 A.2d 105 (1988). However, we note that the trial court treated Colville's action as a statutory appeal from the RBAC's adjudication, and the trial court expressly affirmed that adjudication as supported by substantial evidence. Moreover, in *Colville*, this court also treated the trial court's July 29, 2003, order as a ruling on a statutory appeal and based our decision on an application of the Local Agency Law.

Colville further asserts that his July 19, 2004, appeal was quashed as premature by this court's October 19, 2004, order and that the issuing judge so indicated in a telephone conference on the matter between the parties. Colville contends that this order now constitutes the law of the case with regard to the appealability of the July 29, 2003, order. However, as noted, the October 19, 2004, order quashes Colville's earlier appeal without explanation; therefore, we have no way of confirming whether the judge considered the July 19, 2004, appeal to be premature. In addition, counsel for the RBAC expressly disagreed with Colville's recollection of the telephone conference during oral argument.

restrictive language elsewhere in section 1712, and he asserts that the absence of such language in the compensation cap removal clause indicates a clear intent by the legislature not to create this exclusion. *See* 1 Pa.C.S. § 1921(c)(5), (6).

Colville also reasons that, because the clearly expressed and obvious general legislative intent of the amendment was to increase the availability of retirement benefits to those earning over $4,333.33 per month, absent a specific contrary limitation, this legislative intent should be honored and the amendment should be interpreted to produce the intended result— increased benefits. *See* 1 Pa.C.S. § 1921(c)(1), (3), (4). Finally, Colville argues that neither the circumstances under which the amendment was enacted nor the legislative history suggests an interpretation that differs from his own, *see* 1 Pa. C.S. § 1921(c)(2), (7), and he contends that the administrative interpretation provided by the RBAC should not be afforded any particular weight. *See* 1 Pa.C.S. § 1921(c)(8).

In reaching a contrary conclusion, the RBAC interpreted Act 85 as follows:

> The $4,333.33 monthly compensation cap may be removed if both the employee and the County have made increased appropriate contributions on compensation received during the five year period prior to the employee's retirement and the excess compensation contribution is paid to the Retirement System within 90 days of the employee's retirement date. Employees who retire after the effective date of Act 85 but prior to expiration of a full five year period thereafter, may, at their option, satisfy the excess contribution requirement by making a lump sum contribution equal to what would have been contributed by them if they had a full five year period of employment remaining within which to pay it, provided it is paid no later than 90 days following the employee's retirement.
>
> The Act is not applicable to an employee who was already retired prior to the adoption of the Act and the effective date of the compensation cap removal.

(RBAC's Conclusions of Law, No. 2.)

We first note that in none of his numerous arguments does Colville address the statutory requirement that lump sum contributions must be made within ninety days of an employee's retirement. As the RBAC recognized, Colville clearly cannot satisfy this requirement, which is unambiguously set forth in section 1712(a) of the Code, because Colville's application to pay the lump sum contribution came well beyond ninety days following his retirement. For this reason alone, Colville cannot prevail.

Moreover, we also agree with the RBAC's interpretation of the phrase "within five years *of*" the effective date of Act 85 to mean five years *after* December 31, 1999.[10] In support of its interpretation, the RBAC recognized that Act 85 would be given a retroactive effect if applied to Colville, in violation of the recognized statutory principle that whenever a statute or part of a statute is amended, the new provisions shall be construed as effective only from the date when the amendment became effective. 1 Pa.C.S. § 1953; *see also, Mager v. State Employees' Retirement Board,* 849 A.2d 287 (Pa.Cmwlth.), *appeal denied,* 580 Pa. 691, 859 A.2d 770

---

**10.** The RBAC considered the object to be attained by the Act 85 amendment and the consequences of a particular interpretation of that amendment and concluded that the word "of," as used in the context of Act 85, is equivalent to the word "after." In doing so, the RBAC cited Black's Law Dictionary 1080 (6th ed.1990) (defining "of" as a term denoting that from which anything proceeds.... The word has been held equivalent to after.")

(2004); *Parsonese v. Midland National Insurance Co.*, 550 Pa. 423, 706 A.2d 814 (1998). Further, the RBAC reasoned that, if the legislature intended cap removal to apply to an employee whose retirement allowance already had been computed, there would have been reference in the amendment to a re-computation of the allowance. Finally, the RBAC noted that the legislature could not consider any bill amending a law relative to a public employee retirement plan unless an actuarial note is prepared and submitted to the legislature to provide a reliable estimate of the cost and actuarial effect of the proposed change.[11] Because, in this case, the submitted actuarial study did not include employees who retired prior to January 1, 1999, (*see* Exhibit C to April 27, 2001, RBAC hearing), the RBAC determined that it would be unreasonable to conclude that the legislature intended the amendment to apply to these employees. (RBAC's Conclusions of Law, Nos. 8–11).

The principle is well-settled that an administrative agency's interpretation of a governing statute is entitled to great deference so long as the interpretation is not clearly erroneous. *Whitaker Borough v. Pennsylvania Labor Relations Board*, 556 Pa. 559, 729 A.2d 1109 (1999); *Burris v. State Employes' Retirement Board*, 745 A.2d 704 (Pa.Cmwlth.2000). Like the trial court, we also are persuaded by the reasoning behind the RBAC's interpretation,[12] and, because it is not clearly erroneous, we defer to that interpretation.

Accordingly, we affirm.

11. Section 7(b) of the Public Employee Retirement Study Commission Act, Act of July 9, 1981, P.L. 208, 43 P.S. § 1407(b).

12. Although not mentioned by the RBAC, we also note that a "County employe" is defined as "any person employed by the county." Section 1701 of the Code, 16 P.S. § 4701. We consider it doubtful that a retired employee fits within this definition, and we recognize that "[i]n all cases of doubt the [RBAC] shall determine who is an employe within the meaning of this article."

## ORDER

AND NOW, this 28th day of November, 2005, the order of the Court of Common Pleas of Allegheny County, dated February 15, 2005, is hereby affirmed.