Charles A. CERJACK, an adult individual, and Mayor of Bridgewater Borough,

v.

BRIDGEWATER BOROUGH, a municipal corporation; Councilperson Wayne Shaffer, an adult individual; Councilperson Frank Parker, an adult individual; Councilperson William Rains, an adult individual; and Councilperson Dennis Pittser, Jr., an adult individual.

Appeal of Wayne Shaffer.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2003.

Decided Nov. 6, 2003.

Joseph M. Spratt, Conway, for appellant.

Myron R. Sainovich, Beaver, for appellees.

BEFORE: SMITH–RIBNER, Judge, FRIEDMAN, Judge, McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Wayne Shaffer (Appellant), as a member of the Council of the Borough of Bridgewater (the Borough Council), appeals from an order of Court of Common Pleas of Beaver County (trial court), dated December 11, 2002, entering judgment on the pleadings in favor Charles A. Cerjack (the Mayor), as mayor of the Borough of Bridgewater (the Borough).[1] The effect of the order was to allow the Mayor to cast a tie-breaking vote in order to fill a vacancy on the Borough Council.

On January 6, 2002, at its regular biannual organizational meeting, the Borough Council elected Edward Pavlinich (Pavlinich) as president, and appointed Vicki Reddinger (Reddinger) as the registered elector. Pavlinich died on June 1, 2002. On June 18, 2002, at the regular meeting,

---

1. The Borough, located in Beaver County, is a municipal corporation organized and existing in accordance with the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. §§ 45101–48501 (the Borough Code). The Borough is organized to have five council members and one mayor.

Appellant, Frank Parker (Parker), William Rains (Rains), and Dennis Pittser, Jr., (Pittser) (collectively referred to as the Borough Council Members), as the remaining four Borough Council members, declared his seat vacant and advertised for a replacement.

A special meeting was held on July 2, 2002, to determine who was to fill the vacancy. At this meeting, the Borough Council Members were asked to consider three applications for filling the vacancy. Only two applications were acted upon. In both cases, the vote was recorded as a 2–2 tie. In both cases, the Mayor voted to break the ties. In one instance, his vote would have resulted in an individual, Jeanne Rarick (Rarick), being appointed to fill the vacancy. Neither vote was recognized by the Borough Council. Inasmuch as the Borough Council on its own could not decide on the replacement, the Borough's solicitor directed that the Borough's Vacancy Board (Vacancy Board) hold a meeting to fill the vacancy.[2]

On July 12, 2002, the Mayor filed a complaint in equity in the trial court against the Borough and Borough Council Members, seeking to enjoin the actions of the Vacancy Board and seeking to have his votes recognized.

On July 16, 2002, a quorum of the Vacancy Board met, and Dennis Bevington (Bevington) was appointed to the Borough Council. This person was not the person who would have been appointed to fill the vacancy had the Mayor's votes been recognized at the meeting on July 2, 2002.

On or about August 14, 2002, the Mayor presented a petition for preliminary injunction to prevent Bevington from functioning as a member of the Borough Council. By order of the same date, the trial court granted the petition for preliminary injunction, which provided in part, that Bevington should not participate as a member of the Borough Council until further order of the trial court, and that his status as a member of the Borough Council would be determined at a subsequent hearing or argument.

On September 17, 2002, the Borough and Borough Council Members filed preliminary objections to the Mayor's complaint. By order of the trial court dated November 12, 2002, the preliminary objections were overruled. Interestingly, the trial court concluded that the facts of the case were not in dispute. Therefore, it determined that it could dispose of the case on preliminary objections. The trial court analyzed the legal issues and concluded that the Mayor "had the right to cast the tie-breaking vote...." However, the trial court's order addressed only the fact that the preliminary objections were overruled.

Thereafter, Borough Council members Rains, Pittser and Parker signed a consent to vacate the injunction and appoint a member of the Borough Council, wherein they stated that they consented to the vacating of the injunction and to the appointment of Rarick, the individual who would have been appointed to fill the vacancy had the Mayor's tie-breaking votes been acknowledged. Rains, Pittser and Parker also stated in the consent that they did not intend to appeal the opinion and order of the trial court, dated November 12, 2002. Based on the consent, the Mayor filed a motion to vacate the injunction. By order dated December 10, 2002, the trial court ordered that the preliminary injunction be vacated, that the vote of the

2. The Vacancy Board consists of the Borough Council Members and Reddinger, the registered elector.

Mayor on July 2, 2002, be considered a valid exercise of power, and that Rarick, the appointed member of the Borough Council, be permitted to participate, vote and take action as a member of the Borough Council.

On December 11, 2002, Appellant, who did not sign the consent to vacate, presented a motion for application for a determination of finality, asserting that the practical effect of the trial court's order dated November 12, 2002, was to dispose of all claims. By order of the same date, the trial court effectively granted the motion by entering judgment on the pleadings in favor of the Mayor and against the Borough and the Borough Council Members. By order dated January 16, 2003, the trial court stated that the reasons for the entry of the order dated December 11, 2002 (which is the order that is the subject of this appeal) were set forth in the opinion dated November 13, 2002, relating to the preliminary objections. Appellant then filed a notice of appeal with the trial court.[3]

The issue before this Court is whether, upon the death of a member of the Borough Council, the Mayor may cast a tie-breaking vote at a special meeting of the Borough Council to fill the vacancy. Appellant claims that the Mayor had no power or authority to act to fill the vacan-

cy and that the power and authority was vested solely in the Vacancy Board pursuant to Section 901 of the Borough Code, 53 P.S. § 45901.[4] The Mayor contends that his tie-breaking vote was legal and proper pursuant to Section 1003 of the Borough Code, 53 P.S. § 46003.[5]

Section 901 of the Borough Code, upon which Appellant relies, provides, in relevant part, as follows:

> If any vacancy shall occur in the office of ... member of council ... by death ... or in any manner whatsoever, the borough council shall fill such vacancy within thirty days by appointing, by resolution, a registered elector of the borough.

* * *

> If the council of any borough shall refuse, fail or neglect, or be unable, for any reason whatsoever, to fill any vacancy within thirty days after the vacancy happens, as provided in this section, then the vacancy shall be filled within fifteen additional days by the vacancy board. Such board shall consist of the borough council exclusive of the mayor, and one registered elector ... who shall be appointed by the borough council at the council's first meeting each calendar year and who shall act as chairman of the vacancy board....

3. The law is well-settled that an appeal will be dismissed as moot unless an actual case or controversy exists at all stages of the judicial or administrative process, not merely at the time the complaint is filed. *Musheno v. Department of Public Welfare*, 829 A.2d 1228 (Pa.Cmwlth.2003). It appears at first glance that this matter is moot because three (3) of the four (4) Borough Council Members now consent to and acknowledge the validity of the Mayor's tie-breaking vote that was cast on July 2, 2002. As a result of the consent and acknowledgement of a majority of the Borough Council Members, Rarick was appointed to fill the vacancy. However, an exception to the mootness doctrine applies to this situation

because the matter involves issues important to the public interest, specifically, how the procedures set forth in the Borough Code must be applied in order to fill a vacancy on a borough council. Therefore, we will address the issue before this Court in this matter. *See Musheno.*

4. This section appears in Article IX of the Borough Code relating to vacancies in office.

5. This section appears in Article X of the Borough Code relating to powers and duties of elected officials.

If the vacancy is not filled by the vacancy board ..., the chairman shall ... petition the court of common pleas to fill the vacancy....

53 P.S. § 45901.

Section 1003 of the Borough Code, upon which the Mayor relies, provides, in relevant part, as follows:

In all cases where, by reason of a tie or split vote, the council of any borough shall be unable to ... declare or fill a vacancy in its membership, ... the mayor, if in attendance at the meeting, may at his option, cast the deciding vote, or request that the matter be tabled until a special meeting of council to be held within not less than five days or more than ten days as set by the president of council, and the mayor shall be given at least five days notice of such meeting, at which meeting it shall be the duty of the mayor to cast the tie-breaking vote.

53 P.S. § 46003.

Appellant asserts that the statutes are irreconcilable because both direct what is to occur in the event of a tie vote by the Borough Council in filling a vacancy caused by the death of a member of the Borough Council.[6] The Mayor counters that Sections 901 and 1003 are not irreconcilable, in that the creation of the Vacancy Board by Section 901 of the Borough Code did not remove the power of the Mayor to cast tie-breaking votes. The Mayor argues that under the statutory framework, the Vacancy Board has no authority unless the Borough Council fails to fill any vacancy within thirty (30) days of the occurrence of the vacancy. If a tie vote occurs while the Borough Council is attempting to fill a vacancy within the thirty–(30–) day time period, then the Mayor is permitted to cast the tie-breaking vote pursuant to Section 1003 of the Borough Code. The Mayor argues that the Vacancy Board serves as a last resort intended to assist the Borough Council in filling vacancies when members of the Borough Council, along with the Mayor in situations where there is a tie-vote, are unable to do so. In the case at hand, the Mayor asserts that the Borough Council and the Mayor resolved the issue through the use of the procedure set forth in Section 1003 of the Borough Code; therefore, there was no need for the Vacancy Board to act.[7]

The trial court, agreeing with the Mayor, found the statutes to be reconcilable. The trial court wrote:

We do not agree that the two sections are irreconcilable. It is clear that under Section 46003 [1003], the mayor is empowered to break a tie vote to fill the vacancy on council '[i]n all cases where, by reason of a tie or split vote', council is unable to fill the vacancy. However, the use of a vacancy board under Section 45901[901] '[i]f council ... shall refuse, fail or neglect, or be unable, for any reason whatsoever, to fill any vacancy' is not necessarily irreconcilable with Section 46003 [1003]. There are reasons

---

**6.** Appellant further contends that when Section 901 is read in conjunction with Section 904 of the Borough Code, 53 P.S. § 45904, it is also apparent that Sections 901 and 1003 are irreconcilable. Appellant takes the position that the procedure for replacement of a council member is controlled by Sections 901 and 904, exclusively, and that they place the power to replace solely with the Vacancy Board. However, Section 904, which provides that certain vacancies may be filled using the procedures set forth in Section 901, relates to the right of council to declare a seat of a member vacant for failure to attend meetings and does not apply to the situation at hand where a vacancy results from the death of a council member.

**7.** It appears that the Court has not previously addressed whether Sections 901 and 1003 of the Borough Code are irreconcilable.

other than a tie vote that council may refuse, fail or neglect or be unable to fill the vacancy. Maybe no candidate is satisfactory and council just does not act on an applicant. It is also possible that council is unable to convene a quorum within the time constraints of Section 45901[901]. Thus, it is apparent that reasons exist, other than a tie vote, that the vacancy is not filled.

By recognizing this, we believe we can construe both statutes, which seem to be conflicting, so as to give effect to both. Therefore, Section 46003 [1003] is to be construed so as to apply only where a tie vote of council prevents the filling of the vacancy. In all other situations, the Section 45901[901] procedure would apply.

(Trial court opinion at page 8).

The Statutory Construction Act of 1972, 1 Pa.C.S. 1501–1991 (the Statutory Construction Act), provides guidance regarding statutory interpretation. Section 1932 of the Statutory Construction Act, 1 Pa. C.S. § 1932, relating to statutes in *pari materia*, is applicable here. This section states that:

> (a) Statutes or parts of statutes are in *pari materia* when they relate to the same person or things or to the same class or persons or things.
>
> (b) The statutes in *pari materia* shall be construed together, if possible, as one statute.

1 Pa.C.S. § 1932. Both Sections 901 and 1003 of the Borough Code relate to procedures for filling a vacancy on the Borough Council. Hence, applying Section 1932 of the Statutory Construction Act, this Court must determine whether the Sections 901 and 1003 of the Borough Code may be construed in such a manner so as to give effect to both sections.

After a review of the applicable Sections, we conclude that Sections 901 and 1003 are reconcilable. While Sections 901 and 1003 both relate to filling a vacancy on the Borough Council, Section 1003 applies to a very narrow situation. Specifically, it applies only to situations where the Borough Council has met and voted on a candidate to fill a vacancy, with the result being a tie or split vote. In those limited situations where the Borough Council vote is tied or split, the Mayor, at his option, may cast the deciding vote. In such cases, if the Mayor's tie-breaking vote results in a candidate being selected to fill the vacancy, then Borough Council has, through the use of the provisions of Section 1003 of the Borough Code, effectively filled the vacancy.

On the other hand, pursuant to Section 901, the Vacancy Board is used only when the Borough Council refuses, fails or neglects, or is otherwise unable to fill a vacancy. Hence, it would not apply in situations where the Mayor cast a tie-breaking vote which resulted in the filling of a vacancy, because then the vacancy would have been filled by the Borough Council through the use of the provisions available in Section 1003 of the Borough Code.

As the trial court pointed out, there are other reasons that the Borough Council may refuse, fail, neglect or be unable to fill the vacancy. For instance, in the event of an unexpected and sudden death or resignation, the Borough Council may have difficulty finding satisfactory candidates within a thirty(30–) day time period. It may have difficulty scheduling and providing proper legal notice of a special meeting in the available time period in order to act upon applications of candidates, or it may have difficulty in achieving a quorum to act on potential candidates. Numerous possibilities other than a tie or split vote exist as to why a Borough Council may be unable to fill a vacancy within thirty (30)

days.[8]

By interpreting Sections 901 and 1003 of the Borough Code as discussed above, the statutes may be construed together so as to give effect to both Sections. Moreover, this is consistent with this Court's decision in *Commonwealth of Pennsylvania, ex rel., William P. Lafayette, v. Paul F. Black,* 152 Pa.Cmwlth. 585, 620 A.2d 563 (1993), where we upheld a mayor's ability to cast a tie-breaking vote pursuant to Section 1003 of the Borough Code, albeit in connection with a removal from office and a declaration of a vacancy.[9]

Because we conclude that the trial court did not err when it determined that Sections 901 and 1003 of the Borough Code are reconcilable, we need not address Appellant's argument that we must apply oth-

er provisions of the Statutory Construction Act in order to resolve the alleged irreconcilability.

Accordingly, we affirm the order of the trial court.

### ORDER

AND NOW, this 6th day of November, 2003, the order of the Court of Common Pleas of Beaver County, dated December 11, 2002, is hereby affirmed.

---

8. Additionally, we note that it is possible that a mayor could cast a tie-breaking vote that would result in a candidate not being selected to fill a vacancy, thereby resulting in the vacancy not being filled despite the vote of the mayor. If the vacancy continued for more than thirty (30) days, then Section 901 of the Borough Code would allow the Vacancy Board to fill the position, despite the fact that the mayor previously cast a vote to break the tie. For example, in the case at hand, three potential candidates existed for the Borough Council's vacancy. The Borough Council planned to consider each candidate separately. With regard to their consideration of one candidate, two of the Borough Council Members voted "yes" and two voted "no." As a result of the tie, the Mayor attempted to cast a negative tie-breaking vote, which would have resulted in that particular candidate not being selected to fill the vacancy. Therefore, although the Mayor cast a tie-breaking vote, the vacancy was not filled. Had the Borough Council not been able to fill the vacancy within thirty (30) days despite the Mayor having cast a tie-breaking vote, then Section 901 of the Borough Code would allow the Vacancy Board to fill the position.

9. In *Lafayette,* this Court upheld the provisions of Section 1003 to the extent that they allow a mayor to cast a tie-breaking vote to remove the appointed borough council presi-

dent from the position of president. In *Lafayette,* five of the six borough council members were present at the annual organizational meeting during which meeting they elected a borough council president. At a subsequent meeting of the borough council, a motion was made to remove the borough council president from his position. All six members of the borough council voted on the motion, and the result was a tie vote. The mayor attempted to enter a tie-breaking vote in favor of removing the president, but the borough solicitor rendered an opinion that the mayor could not vote on the motion. For that reason, the motion was defeated. Three of the borough council members filed a *quo warranto* action in the Court of Common Pleas of Allegheny County to remove the borough council president on the basis that he had been validly removed as a result of the above-described motion and vote before the borough council. Upon motion for judgment on the pleadings, the Court of Common Pleas of Allegheny County declared the office vacant. The matter was appealed to this Court, which affirmed. In doing so, we noted that Section 1003 permitted the mayor to cast a tie-breaking vote to declare or fill any vacancy in the membership of the borough council. Based upon Section 1003, we held that the mayor was entitled to cast the tie-breaking vote to remove the council member and declare a vacancy.