M. Lawrence SHIELDS III, Appellant

v.

**COUNCIL OF BOROUGH OF BRADDOCK.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2014.
Decided March 27, 2015.

M. Lawrence Shields III, pro se.

Falco A. Muscante, Pittsburgh, for appellee.

BEFORE: RENÉE COHN JUBELIRER, Judge, P. KEVIN BROBSON, Judge, ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

M. Lawrence Shields III, pro se, former solicitor of the Borough of Braddock (Borough), appeals from the Order of the Court of Common Pleas of Allegheny County (trial court) that granted the Preliminary Objections (POs) in the nature of a demurrer filed by the Borough,[1] entered judgment in favor of the Borough and against Mr. Shields, and dismissed with prejudice Mr. Shields's Complaint in Mandamus (Complaint). The trial court held that, pursuant to The Borough Code (Code),[2] the Mayor of the Borough (Mayor) had the authority to vote and break the tie among Borough Council members on a motion removing Mr. Shields as Borough solicitor and appointing a new solicitor. On appeal Mr. Shields argues that, pursuant to Sections 1005(1) and 1116 of the Code,[3] the

---

**1.** The trial court noted that the Borough had been "incorrectly designated as Council of Borough of Braddock." (Trial Ct. Order.)

**2.** Act of February 1, 1966, P.L. (1965) 1656, *as amended, formerly* 53 P.S. §§ 45101–48501, *repealed by* Section 3(2) of the Act of April 18, 2014, P.L. 432. Section 1003 of the Code provided, in relevant part, that a mayor may cast the deciding vote where there is a tie vote leaving a borough council unable to, *inter alia,* enact or pass any "motion, or to declare or fill any vacancy" on council "or in any other borough office, or to take any action on any matter lawfully brought before it." 53 P.S. § 46003. The Code was amended in 2012, effective on July 16, 2012. The Code subsequently was repealed and reen-

acted, with an effective date of June 17, 2014. *See* 8 Pa.C.S. §§ 101–3501. However, this matter arose on February 14, 2012 prior to the effective date of either the 2012 amendments or the 2014 reenactment.

**3.** *Formerly* 53 P.S. §§ 46005(1), 46116, *repealed by* Section 3(2) of the Act of April 18, 2014, P.L. 432. Section 1005(1) provided, in relevant part, that borough councils have the power to appoint a solicitor, and create any other officers it considers necessary, who serve at the pleasure of the borough council. 53 P.S. § 46005(1). Section 1116 stated, in pertinent part, that borough solicitors have control over a borough's legal affairs and no other legal counsel may be hired by borough

authority to appoint or remove a borough solicitor lies solely with a borough's council and, therefore, a borough's mayor may not lawfully vote to break a tie regarding such appointment or removal.

Mr. Shields avers the following facts in his Complaint. Mr. Shields served as the Borough's solicitor until Borough Council's regular meeting on February 14, 2012, when "a [m]otion was made and seconded for Council to terminate the services of [Mr. Shields] . . . and appoint" a new solicitor for the Borough. (Compl. ¶ 3, R.R. at 6a.) Borough Council has six members; three members voted in favor of and three members voted in opposition to removing Mr. Shields as solicitor, resulting in a tie. (Compl. ¶¶ 4–5, R.R. at 7a.) Mr. Shields advised Borough Council that the Mayor could not break the tie vote, but, nonetheless, the Mayor voted in favor of the motion removing Mr. Shields as solicitor and appointing the new solicitor. (Compl. ¶ 6, R.R. at 7a.)

Mr. Shields asserts in the Complaint that the Mayor's tie-breaking "vote was illegal and had no legal force and effect" because that vote, essentially, gave him the authority to appoint and remove the Borough's solicitor, which, pursuant to Section 1005(1), *formerly* 53 P.S. § 46005(1), lies exclusively with Borough Council. (Compl. ¶ 7, R.R. at 7a.) Mr. Shields avers that, because the Mayor's vote was illegal, the "[m]otion did not lawfully pass," he "was not lawfully removed as" Borough solicitor, and the new solicitor was not lawfully appointed. (Compl. ¶ 8, R.R. at 7a.) According to Mr. Shields, despite the illegality of the February 14, 2012 vote, the Borough has employed the new solicitor since that date and Mr. Shields has been "illegally deprived of acting as [s]olicitor of the Borough." (Compl. ¶ 10, R.R. at 8a.) Mr. Shields averred that he "has sustained monetary damages equal to the amount of legal fees, which he would have earned as [s]olicitor . . . during the period from February 15, 2012 through the date [he] is reinstated as [s]olicitor." (Compl. ¶ 10, R.R. at 8a.) Mr. Shields requests an order immediately reinstating him as the Borough's solicitor, directing the Borough to pay him for the amount of legal fees he would have earned as solicitor from February 15, 2012, with interest and costs, and any other relief the trial court deemed appropriate. (Compl., Wherefore Clause, R.R. at 8a.)

The Borough filed POs to the Complaint, asserting four grounds on which to dismiss the Complaint with prejudice. The Borough demurred to the legal sufficiency of the Complaint based upon Section 1003 of the Code, *formerly* 53 P.S. § 46003, which authorized the Mayor to cast the tie-breaking vote. (POs ¶¶ 9–10, R.R. at 12a.) The Borough also challenged the legal sufficiency of the Complaint asserting that Mr. Shields did not aver the necessary requirements for mandamus relief. (POs ¶¶ 11–13, R.R. at 12a–13a.) The Borough further asserted that the Complaint was barred by laches because Mr. Shields waited almost twenty months to file the Complaint, thereby failing to exercise due diligence and mitigate his damages. (POs ¶¶ 14–18, R.R. at 13a.) Finally, the Borough objected to the legal sufficiency of the Complaint because it "incorrectly designated the 'Council of Borough of Braddock' as the Defendant" rather than the Borough itself. (POs ¶¶ 19–21, R.R. at 13a–14a.)

The parties filed briefs supporting their respective positions and, thereafter, the trial court issued its Order granting the Borough's POs in the nature of a demurrer and dismissing the Complaint with prejudice. (Trial Ct. Order.) The trial court reasoned:

officials without permission of borough council. 53 P.S. § 46116.

[Mr. Shields] has filed a thought provoking action raising long range implications of the power of the Mayor [of the] Borough to set policy particularly in the appointment of a Solicitor. However, I believe the Borough Code is quite clear about the Mayor's powers when Council is deadlocked. Thus, I have to sustain the Prelim[inary] Objections.

(Trial Ct. Order.) Other than indicating that the Complaint incorrectly identified Borough Council as the defendant, the trial court did not address the Borough's other POs. Mr. Shields now appeals to this Court.[4, 5]

██ On appeal, Mr. Shields argues that, under the Code, only Borough Council could remove him from his position as solicitor and the Mayor had no legal authority to break the tie in favor of removing him as Borough solicitor. Mr. Shields asserts that we should be guided by our decision in *Almy v. Borough of Wilkinsburg*, 53 Pa.Cmwlth. 46, 416 A.2d 638 (1980), in which this Court held that a borough mayor could not cast the tie-breaking vote in connection with the appointment or removal of borough police officers because that authority resided exclusively with borough council. Mr. Shields acknowledges a mayor's powers under Section 1003, but contends that this section conflicts with those provisions in the Code that give exclusive authority to borough council over borough solicitors. Thus, according to Mr. Shields, under the principles of statutory construction, the more specific provisions giving a borough council sole power to appoint and remove a solicitor, Sections 1005(1) and 1116, *formerly* 53 P.S. §§ 46005(1), 46116, control

over the general provision authorizing a mayor to break tie votes in " 'any matter lawfully brought before [Council].' " (Mr. Shields's Br. at 9 (quoting *formerly* 53 P.S. § 46003).)

██ In reviewing preliminary objections, we consider as true "all well pleaded relevant and material facts." *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439, 443 n. 7 (Pa.Cmwlth.2009). However, "the court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Penn Title Insurance Company v. Deshler*, 661 A.2d 481, 483 (Pa.Cmwlth. 1995). "A demurrer will not be sustained unless the face of the complaint shows that the law will not permit recovery, and any doubts should be resolved against sustaining the demurrer." *Id.* Reviewing preliminary objections involves "a question of law ... to which our standard of review is *de novo* and our scope of review is plenary." *Petty*, 967 A.2d at 443 n. 7. Thus, we must determine whether, based on the face of the Complaint and as a matter of law, the relevant provisions of the Code "will not permit recovery" to Mr. Shields and, if so, uphold the trial court's Order sustaining the Borough's demurrer. *Penn Title Insurance Company*, 661 A.2d at 483.

The relevant provisions of the statute have been amended twice since the vote took place, in 2012 and 2014, so we must carefully apply the relevant statutory provisions in effect on the date of the February 14, 2012 vote, which provide, in relevant part, the following. Section 1003 provided:

---

4. Our "review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether that court abused its discretion or committed an error of law." *Petty v. Hospital Service Association of Northeastern Pennsylvania*, 967 A.2d 439, 443 n. 7 (Pa.Cmwlth.2009).

5. The Borough filed a Motion to Quash Mr. Shields's appeal as untimely; however, this Court denied the Motion to Quash by Memorandum and Order dated July 14, 2014. *Shields v. Council of Borough of Braddock* (Pa.Cmwlth., No. 893 C.D.2014, filed July 14, 2014) (single judge op.).

In all cases where, by reason of a tie or split vote, the council of any borough shall be unable to enact or pass any ordinance, resolution, or motion, or to declare or fill any vacancy in its membership, or in any other borough office, or to take any action on any matter lawfully brought before it, the mayor, if in attendance at the meeting, may at his option cast the deciding vote, or request that the matter be tabled until a special meeting of council to be held within not less than five days or more than ten days at which time the matter shall be reconsidered by council and, if a tie or split vote still exists, it shall be the duty of the mayor at that time to cast the deciding vote. If such a tie or split vote shall occur at any meeting when the mayor is not in attendance the matter shall be tabled to a special meeting to be held within not less than five days or more than ten days as set by the president of council, and the mayor shall be given at least five days' notice of such meeting, at which meeting it shall be the duty of the mayor to cast the tie-breaking vote.

*Formerly* 53 P.S. § 46003. Section 1005(1) stated:

The council of the borough shall have power:

(1) To create, by motion, ordinance or resolution, and appoint a treasurer, a secretary, a solicitor, an engineer, a street commissioner and such other officers as it deems necessary. The treasurer and the secretary shall not be members of council. A bank or bank and trust company may be appointed as treasurer. All officers and employes appointed by the council, with the exception of those who under the provisions of this, or any other act are under civil service or have a definite term of office, shall serve for an indefinite term at the pleasure of the council.

*Formerly* 53 P.S. § 46005(1). Finally, Section 1116 provided:

The legal matters of the borough shall be under the control of the borough solicitor, and no department or officer of the borough, except as herein otherwise provided, shall employ an additional counsel without the assent or ratification of the council. In the absence of the solicitor, the law firm of which he is a member or associate may perform any of the duties or functions of the solicitor.

*Formerly* 53 P.S. § 46116.[6]

Mr. Shields relies on *Almy* to support his argument that the Mayor exceeded his authority by voting to remove Mr. Shields as solicitor and appoint a new solicitor. In *Almy*, a borough council passed a resolution pursuant to Section 1121 [7] of the Code that reduced the size of the borough's police force, thereby requiring the fur-

---

6. Mr. Shields asserts that Section 1116 places the exclusive right to appoint or remove the solicitor with borough council. However, the specific language stating that a solicitor serves at the pleasure of council was not added to Section 1116 until the 2012 amendment; therefore, it was not in effect at the time of the February 14, 2012 vote in this matter.

7. *Formerly* 53 P.S. § 46121, repealed by Section 3(2) of the Act of April 18, 2014, P.L. 432. Section 1121 provided, in relevant part:

Borough council may, subject to the civil service provisions of this act, if they be in effect at the time, appoint and remove, or suspend, or reduce in rank, one or more suitable persons, citizens of the United States of America, as borough policemen.
. . . .
The mayor of the borough shall have full charge and control of the chief of police and the police force, and he shall direct the time during which, the place where and the manner in which, the chief of police and the police force shall perform their duties, except that council shall fix and determine the total weekly hours of employment that shall apply to the policemen.
*Id.*

lough of several borough police officers who subsequently sought reinstatement and back pay via a mandamus action. *Almy*, 416 A.2d at 639–40. One of the issues in *Almy* was whether, pursuant to Section 1003, a borough mayor had the authority to break a tie vote on a motion to rescind the resolution furloughing the police officers, which, in essence, would have permitted the mayor to decide whether to furlough the officers in the first instance. *Id.* at 642. Noting that although Section 1121 gave the mayor the authority to supervise and direct the police force, that section gave borough council the power to appoint and remove police officers; therefore, we concluded that such power was exclusively held by borough council. *Id.* at 640–41. We held that permitting the mayor to cast the deciding vote on the motion to rescind would have allowed the mayor to vote on the removal of the police officers, which was not within the mayor's powers under Section 1121. *Id.* at 642.

As pointed out by the Borough, *Almy* involved Section 1121, which very specifically delineated the roles of borough council and mayor as they pertained to a borough's police force. Borough council had the authority to, among other things, appoint and remove police officers, and the mayor's authority over the police force was limited to supervising and directing the actions of the police force. *Formerly* 53 P.S. § 46121; *Almy*, 416 A.2d at 640–41. By the plain language of Section 1121, it was apparent that the mayor did not have the authority to vote on the appointment or removal of police officers and, therefore, would not have been authorized to cast the tie-breaking vote on that matter. Pursuant to the following review of the language of Section 1003 and other decisions by this Court involving a borough mayor's participation in the appointment and/or removal of non-police borough officials, we agree with the Borough that *Almy* is limited to Section 1121 and is inapplicable here.

The touchstone of interpreting statutory language is to ascertain and effectuate the intent of the Legislature. Section 1921 of the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. § 1921(a); *Colville v. Allegheny County Retirement Board*, 592 Pa. 433, 444, 926 A.2d 424 (2007). A guiding principle of statutory construction is that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only when the words of a statute are unclear or ambiguous will courts engage in statutory construction to determine the intent of the Legislature. 1 Pa. C.S. § 1921(c); *Zane v. Friends Hospital*, 575 Pa. 236, 836 A.2d 25, 31 (2003). Moreover, pursuant to Section 1933 of the SCA, where "a general provision in a statute shall be in conflict with a special provision . . ., the two shall be construed, if possible, so that effect may be given to both," but if there is an irreconcilable conflict "the special provisions shall prevail and shall be construed as an exception to the general provision." 1 Pa.C.S. § 1933.

Section 1003 specifically authorized a mayor to cast the deciding vote "[i]n all cases where, by reason of a tie or split vote, the council . . . shall be unable to . . . *declare or fill any vacancy in·its membership, or in any other borough office . . . .*" *Formerly* 53 P.S. § 46003 (emphasis added). Section 1003 further provided that if the mayor does not cast the tie-breaking vote at the mayor's option at the initial meeting, and a special meeting is then held to reconsider the issue, "it shall be the *duty* of the mayor to cast the tie-breaking vote" if the vote remains deadlocked. *Id.* (emphasis added). Thus, Section 1003 expressly permitted and, ultimately, mandated a mayor to participate in a borough council's decision to declare and fill a vacancy of a borough office, *id.*, which, pur-

suant to Section 1005(1), included the borough solicitor, *formerly* 53 P.S. § 46005(1). The power to declare a vacancy in conjunction with the power to appoint under Section 1003, as it existed on February 14, 2012, provided a borough mayor with the ability to vote to remove a borough official when there was a tie vote among the borough council members. A council vote to remove a borough official necessarily results in a vacancy in that office, thus, that is one way a vacancy can be made known or declared to the public.[8] For example, in a similar factual situation involving a borough council's removal of a sitting borough council president, this Court held that the borough mayor had the authority, pursuant to Section 1003, to break a tie vote of the borough council members. *Commonwealth ex rel. Lafayette v. Black,* 152 Pa.Cmwlth. 585, 620 A.2d 563, 564–65 (1993). The Court stated that when a mayor casts a tie-breaking vote to remove the borough council president, "the office of [p]resident ... became vacant." *Id.* at 565. *See also Cerjack v. Bridgewater Borough,* 835 A.2d 845 (Pa.Cmwlth.2003) (a borough mayor had the authority, under Section 1003, to cast the tie-breaking vote to fill a vacancy on the borough council).[9]

Mr. Shields asserts that there is an irreconcilable conflict between the language in Sections 1003 and 1005, because Section 1005(1) provided that "[a]ll officers and employees appointed by the council" who do not have a definite term of employment or are non-civil service employees, "shall serve ... at the pleasure of the council," while the plain language of Section 1003 specifically authorized a mayor to cast a vote in order to break a tie or split vote in certain matters, including the declaring and filling of vacancies for borough offices. *Formerly* 53 P.S. §§ 46003, 46005. Although we do not believe there is an irreconcilable conflict between these provisions, even if these provisions did conflict, we agree with the Borough that Section 1003 is the more specific of the two provisions because it addressed what specifically should occur if a borough council's vote on particular matters is tied, rather than a statement regarding the general powers of a borough council. Under the rules of statutory construction, the specific provision takes precedence over the general and is construed as "an exception to the general provision." 1 Pa.C.S. § 1933. Therefore, Section 1003's specific authorization of a mayor to vote on the vacancy and appointment of borough officers in tie situations would be an exception to Section 1005's general indication that borough offi-

---

8. Other ways could include announcing an official's resignation or death in office.

9. This Court took an even broader view of a borough mayor's authority to cast a tie-breaking vote in *Morelli v. Borough of St. Mary's,* 1 Pa.Cmwlth. 612, 275 A.2d 889 (1971). In *Morelli,* the mayor cast the deciding, tie-breaking vote to enact an amendment to a borough zoning ordinance. *Id.* at 890. Property owners challenged the amendment arguing, *inter alia,* that it was not duly enacted because the mayor did not have the authority to vote on the amendment. *Id.* at 891. We disagreed, holding that a mayor's tie-breaking authority set forth in Section 1003 "applie[d] to all normal voting procedures" and the only limits on that authority was where the Code required more than a majority vote of the council members present on an issue. *Id.* at 892. This Court identified two such instances under the Code: (1) the appointment of an independent auditor under Section 1005(7), which required a two-thirds vote of the entire council, 53 P.S. § 46005(7); and (2) the appointment of a borough manager under Section 1141, which required a majority of all the members of council, *formerly* 53 P.S. § 46141, *repealed by* Section 3(2) of the Act of April 18, 2014, P.L. 432. *Morelli,* 275 A.2d at 892–93. Because the normal voting procedures applied to amending the borough's zoning ordinance, we held that the mayor could cast his vote to break the tie and, based on that vote, the amendment to the zoning ordinance was duly enacted. *Id.* at 893.

cers serve at borough council's pleasure. Pursuant to Section 1003, the Mayor had the express authority to cast the tie-breaking vote regarding the Borough solicitor position on February 14, 2012, and the trial court did not err or abuse its discretion in sustaining the Borough's demurrer and dismissing the Complaint on this basis.

Accordingly, the trial court's Order is affirmed.

### ORDER

**NOW**, March 27, 2015, the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is hereby **AFFIRMED**.