IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Building Owners and Managers Association of Pittsburgh | : | No. 100 C.D. 2016 |
| | : | Argued: November 16, 2016 |
| v. | : | |
| | : | |
| City of Pittsburgh, Council of the City of Pittsburgh, and William Peduto, and Service Employees International Union Local 32 BJ | : | |
| | : | |
| Appeal of: Service Employees International Union Local 32BJ | : | |

| | | |
|---|---|---|
| Building Owners and Managers Association of Pittsburgh | : | No. 102 C.D. 2016 |
| | : | Argued: November 16, 2016 |
| v. | : | |
| | : | |
| City of Pittsburgh, Council of the City of Pittsburgh, and William Peduto, and Service Employees International Union Local 32 BJ | : | |
| | : | |
| Appeal of: City of Pittsburgh, Council of the City of Pittsburgh, and William Peduto | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                              FILED: May 17, 2017

The City of Pittsburgh, its Council, its Mayor (collectively, City) and the Service Employees International Union Local 32 BJ (SEIU) appeal the order of the Allegheny County Court of Common Pleas (trial court)[1] granting the Building Owners and Managers Association of Pittsburgh's (BOMA) motion for judgment on the pleadings and declaring that Sections 410.4(A), (B), and (C)(2) of the City's Safe and Secure Building Act (Ordinance)[2] are invalid and unenforceable. We affirm.

In August 2015, BOMA filed a complaint against the City for equitable and declaratory relief challenging the Ordinance as *ultra vires* in violation of Section 2962(f) of the Home Rule Charter and Optional Plans Law (Home Rule Charter Law)[3] and SEIU intervened. All parties filed a motion for judgment on the pleadings. In ruling on the motions, the trial court noted the

---

[1] The appeals were consolidated by this Court's order of February 29, 2016.

[2] Sections 410.4(A), (B), and (C)(2) of the Ordinance require "Security Officers" and "Building Service Employees" who work in commercial office buildings, retail buildings of at least 100,000 square feet, museums and cultural institutions of at least 100,000 square feet, and properties owned, managed, or occupied by the City to receive training by a school certified by the City's Fire Bureau to identify, prevent, and respond to emergency situations and for a "Covered Owner" to certify compliance therewith. *See* Trial Court 12/17/15 Opinion at 3-7; Reproduced Record (R.R.) at 6a-7a.

[3] 53 Pa. C.S. §2962(f). Section 2962(f) states:

> **(f) Regulation of business and employment.**—A municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities.

holding in the Supreme Court's opinion in *Building Owners and Managers Association of Pittsburgh v. City of Pittsburgh*, 985 A.2d 711 (Pa. 2009) (*BOMA*) that the City exceeded its authority and violated the Home Rule Charter Law when the City enacted "The Protection of Displaced Contract Workers Ordinance" (Displaced Workers Ordinance) requiring employers with new service contracts to retain the employees of the former contractor for 180 days. Herein, the trial court concluded:

> Sections 410.4(A), (B), and (C)(2) of the [Ordinance] place affirmative duties on businesses, occupations and employers in violation of the [Home Rule Charter Law]. Penalties for non-compliance exist and include a fine and "preventing the occupancy of a Covered Property." *See* Section 410.7(B). I am bound by the Supreme Court's ruling in [*BOMA*]. For these reasons, [BOMA]'s motion for judgment on the pleadings is granted.[4]

Trial Court 12/17/15 Opinion at 10. The City and SEIU then filed the instant consolidated appeals.[5]

The City first argues that: (1) the Ordinance enjoys a presumption of validity; (2) the Pennsylvania Constitution provides the City a broad grant of authority; (3) the Home Rule Charter Law requires that the City's authority be liberally construed in favor of the City; and (4) the City's charter contains a broad statement of authority. However, the City's assertions in this regard are followed

---

[4] A motion for judgment on the pleadings should be granted when the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. *Swartz v. Swartz*, 689 A.2d 302, 303 (Pa. Super. 1997).

[5] Because this matter involves purely a question of law, our scope of review is plenary and the standard of review is *de novo*. *Shields v. Council of Borough of Braddock*, 111 A.3d 1265, 1268 (Pa. Cmwlth. 2015).

by little analysis and do not address Section 2962(f) of the Home Rule Charter Law, upon which the trial court based its decision.

As noted above, Section 2962(f) of the Home Rule Charter Law states, in relevant part, that "[a] municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers . . . except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities." 53 Pa. C.S. §2962(f).

In *Smaller Manufacturers Council v. Council of City of Pittsburgh*, 485 A.2d 73 (Pa. Cmwlth. 1984), we considered a City ordinance that required plant owners and operators to notify the Bureau of Business Security of any plans to close, relocate, or reduce operations if such actions would affect more than 15% of their employees. We held that the ordinance was invalid under former Section 302(d) of the Home Rule Charter Law,[6] a substantially similar prior version of Section 2962(f), because it regulated the duties, responsibilities, and requirements of the businesses. We further held in *Smaller* that, based on the clear language of

---

[6] Act of April 13, 1972, P.L. 184, *formerly* 53 P.S. §1-302(d), repealed by the Act of December 19, 1996, P.L. 1158, 53 Pa. C.S. §2962(f), which stated:

> No municipality which adopts a home rule charter shall at any time thereunder determine the *duties, responsibilities or requirements* placed upon *businesses*, occupations and *employers*, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as *expressly provided by the acts of the General Assembly* which are applicable in every part of the Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities. (Emphasis added.)

4

Section 302(d), the ordinance was prohibited unless the City was expressly authorized to enact such an ordinance by the legislature.

Thereafter, in *BOMA*, our Supreme Court considered whether the City exceeded its authority as a home rule municipality when it enacted the Displaced Workers Ordinance. In its analysis, the Supreme Court cited *Smaller* and affirmed this Court's holding that the ordinance at issue in *BOMA* also was invalid. In doing so, the court noted that the ordinance in *BOMA* was "far more invasive [than the reporting requirement in *Smaller*] because it forces contractors to retain certain employees for approximately half a year." 985 A.2d at 714-15. Additionally, the court rejected the argument that preemption is the only limitation on the City's authority to regulate business.

In this case, the Ordinance imposes numerous affirmative duties upon employers. Sections 410.4(A), (B), and (C)(2) affirmatively require "Security Officers" and "Building Service Employees" who work in commercial office buildings, retail buildings of at least 100,000 square feet, museums and cultural institutions of at least 100,000 square feet, to receive training by a school certified by the City's Fire Bureau to identify, prevent, and respond to emergency situations, and for a "Covered Owner" to certify compliance therewith. R.R. at 6a-7a. In light of the express limitations in Section 2962(f) of the Home Rule Charter Law and following the decisions in *BOMA* and *Smaller*, we must conclude that the City was without authority to enact the Ordinance.

The City and SEIU maintain that the limitations on municipal authority in Section 2962(f) are inapplicable here because the exception clause in Section 2962(f) applies as express authority granted to the City by the relevant

5

provisions of the Second Class City Code[7] and/or the Emergency Management Services Code.[8] We disagree.[9]

The City and SEIU assert that the Second Class City Code specifically authorizes the City to: "make regulations to secure the general health of the inhabitants, and to remove and prevent nuisances;" "decrease and prevent fire, the spread of fire, and fire waste, loss of life from fire, and loss of life or damage to property from unsafe or improper construction or design of buildings;" and "provide for the preparation and distribution by the Department of Public Safety of rules and regulations to minimize the danger of fire and lessen fire waste." 53 P.S. §§23145, 25081, 25092. However, as noted above, the exception in Section 2962(f) of the Home Rule Charter Law only applies to authority "as expressly provided by statutes . . . ." 53 Pa. C.S. §2962(f). The foregoing provisions do not expressly grant the City the specific authority to impose the aforementioned affirmative duties upon private employers. The provisions of Chapter 62 of the Second Class City Code,[10] relating to the regulation of business and occupations, also do not expressly provide the City the power to impose such affirmative duties upon private employers. Therefore, the Second Class City Code does not compel

---

[7] *See* Article XIX, Section 3, Clause XXXIII of the Act of March 7, 1901, P.L. 20, 53 P.S. §23145; Section 1(a), (*l*) of the Act of May13, 1915, P.L. 297, 53 P.S. §§25081, 25092.

[8] *See* 35 Pa. C.S. §§7501(a), 7503.

[9] Because the provisions of Section 2962(f) of the Home Rule Charter Law are applicable in this case, we reject the City's and SEIU's assertion that the Supreme Court's opinion in *BOMA* is not controlling and SEIU's reliance on Section 2601 of the Home Rule Charter Law.

[10] Act of March 31, 1927, P.L. 95, 53 P.S. §§25251-25257; Act of June 10, 1881, P.L. 109, 53 P.S. §§25271-25273; Act of May 21, 1921, P.L. 1053, *as amended*, 53 P.S. §§25291-25296; Act of April 4, 1905, P.L. 102, *as amended*, 53 P.S. §§25311-25325.

application of the exception in Section 2962(f) of the Home Rule Charter Law because it does not confer upon the City the authority to enact Sections 410.4(A), (B), and (C)(2) of the Ordinance.

The City and SEIU also argue that the City has authority under Sections 7501(a) and 7503 of the Emergency Management Services Code to enact Sections 410.4(A), (B), and (C)(2) of the Ordinance.[11] However, the Emergency

[11] 35 Pa. C.S. §§7501(a); 7503. Section 7501(a) states, in relevant part:

> Each political subdivision . . . is directed and authorized to establish a local emergency management organization in accordance with the plan and program of the Pennsylvania Emergency Management Agency. Each local organization shall have responsibility for emergency management, response and recovery within the territorial limits of the political subdivision within which it is organized . . . .

35 Pa. C.S. §7501(a).

In turn, Section 7503 states:

> Each political subdivision shall, either individually or pursuant to the provisions of the [General Local Government Code, 53 Pa. C.S. §§2301-2317], adopt an Intergovernmental Cooperation agreement with other political subdivisions to:
>
> (1) Prepare, maintain and keep current a disaster emergency management plan for the prevention and minimization of injury and damage caused by disaster, prompt and effective response to disaster and disaster emergency relief and recovery in consonance with the Pennsylvania Emergency Management Plan.
>
> (2) Establish, equip and staff an emergency operations center, consolidated with warning and communication systems to support government operations in emergencies and provide other essential facilities and equipment for agencies and activities assigned emergency functions.

**(Footnote continued on next page…)**

Management Services Code does not expressly empower the City to enact these Ordinance provisions because it does not apply to the regulation and training of "Security Officers" or "Building Service Employees" of private employers. Rather, Sections 7501 and 7503 merely authorize the City to establish its own

---

**(continued…)**

> (3) Provide individual and organizational training programs to insure prompt, efficient and effective disaster emergency services.
>
> (4) Organize, prepare and coordinate all locally available manpower, materials, supplies, equipment, facilities and services necessary for disaster emergency readiness, response and recovery.
>
> (5) Adopt and implement precautionary measures to mitigate the anticipated effects of disaster.
>
> (6) Execute and enforce such rules and orders as the agency shall adopt and promulgate under the authority of this part.
>
> (7) Cooperate and coordinate with any public and private agency or entity in achieving any purpose of this part.
>
> (8) Have available for inspection at its emergency operations center all emergency management plans, rules and orders of the Governor and the agency.
>
> (9) Provide prompt and accurate information regarding local disaster emergencies to appropriate Commonwealth and local officials and agencies and the general public.
>
> (10) Participate in all tests, drills and exercises, including remedial drills and exercises, scheduled by the agency or by the Federal Government.
>
> (11) Participate in the program of integrated flood warning systems under section 7313(6) (relating to powers and duties).

35 Pa. C.S. §7503.

"local emergency management organization" and to enter into intergovernmental cooperation agreements with other government entities with respect to emergency management, response and recovery. At most, Section 7503(7) authorizes the City to "[c]ooperate and coordinate" with private employers and does not empower the City to compel the regulation and training of their private employees.

Finally, SEIU argues that the Ordinance is a health regulation authorized by Section 2962(c)(4) of the Home Rule Charter Law, which allows the City "to enact and enforce ordinances related to building codes or any other safety, sanitation or health regulation *pertaining thereto.*" 53 Pa. C.S. §2962(c)(4) (emphasis added). Section 2962(c)(4) states:

> (c) Prohibited Powers- *A municipality shall not*:
>
> (4) *Enact or promulgate any ordinance* or regulation with respect to definitions, sanitation, *health*, standards of identity or labeling pertaining to the manufacture, processing, storage, distribution and sale of any foods, goods, or services subject to any Commonwealth statutes and regulations unless the municipal ordinance or regulation is uniform in all respects with the Commonwealth statutes and regulations thereunder. *This paragraph does not affect the power of any municipality to enact and enforce ordinances relating to building codes or any other safety, sanitation or health regulations pertaining thereto.*

53 Pa. C.S. §2962(c)(4) (emphasis added). However, in making this argument, SEIU relies on words taken out of context; significantly, it does not explain how the Ordinance "pertains to" building codes.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Building Owners and Managers Association of Pittsburgh | : | No. 100 C.D. 2016 |
| v. | : | |
| City of Pittsburgh, Council of the City of Pittsburgh, and William Peduto, and Service Employees International Union Local 32 BJ | : | |
| Appeal of: Service Employees International Union Local 32BJ | : | |
| Building Owners and Managers Association of Pittsburgh | : | No. 102 C.D. 2016 |
| v. | : | |
| City of Pittsburgh, Council of the City of Pittsburgh, and William Peduto, and Service Employees International Union Local 32 BJ | : | |
| Appeal of: City of Pittsburgh, Council of the City of Pittsburgh, and William Peduto | : | |

## **O R D E R**

AND NOW, this 17th day of May, 2017, the order of the Allegheny County Court of Common Pleas dated December 17, 2015, at No. GD 15-13329 is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

Building Owners and Managers      :
Association of Pittsburgh      :
     :
     :
v.      :
     :
City of Pittsburgh, Council of the      :
City of Pittsburgh, and William Peduto,      :
and Service Employees International      :
Union Local 32 BJ      :
     :
Appeal of: Service Employees      :    No. 100 C.D. 2016
International Union Local 32 BJ      :    Submitted: November 16, 2016


Building Owners and Managers      :
Association of Pittsburgh      :
     :
     :
v.      :
     :
City of Pittsburgh, Council of the      :
City of Pittsburgh, and William Peduto,      :
and Service Employees International      :
Union Local 32 BJ      :
     :
Appeal of: City of Pittsburgh,      :
Council of the City of Pittsburgh,      :    No. 102 C.D. 2016
and William Peduto      :    Submitted: November 16, 2016


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK Judge
           HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE            FILED: May 17, 2017

As my dissent in *Pennsylvania Restaurant and Lodging Association v. City of Pittsburgh*, (Pa. Cmwlth., Nos. 79 C.D. 2016 and 101 C.D. 2016, filed May 17, 2017) addresses my concerns with the present majority opinion, it is incorporated herein.

 

 

_____
JOSEPH M. COSGROVE, Judge