IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maura A. Gillen, : 
        Appellant : 
     : 
    v. : 
     : 
Board of Commissioners : No. 1063 C.D. 2024
Township of Lower Merion : Argued:  June 3, 2025


BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                        FILED:  June 27, 2025

       Maura A. Gillen (Gillen), pro se, appeals from the Montgomery County Common Pleas Court's (trial court) July 15, 2024 order affirming the Lower Merion Township (Township) Board of Commissioners' (Board) February 23, 2022 decision that partially denied Gillen's application for a certificate of appropriateness (Application) to modify her property located at 537 Old Lancaster Road in the Township's Haverford Historic District (Property).  Gillen presents one issue for this Court's review: whether the Board properly partially denied the Application absent evidence of the effect of the proposed modifications on the general historic and architectural nature of the Haverford Historic District.[1]  After review, this Court affirms.

---

[1] Gillen presented the following issue in her Statement of the Questions Involved:

Under Pennsylvania Law . . . whether a local agency can prohibit a homeowner from making changes to a home that is a "contributing

The Haverford Historic District is one of seven historic districts the Township created pursuant to what is commonly known as the Historic District Act (Act).[2] The Act

> allows municipalities to create local historic districts. Pursuant to the Act, locally created historic districts must be certified by the Pennsylvania Historical and Museum Commission []. Subsequent to such certification, the municipality may appoint a Board of Historical Review [] to advise the municipality with regard to issuing a "certificate of appropriateness" to any property owner seeking to erect, demolish, or **alter** structures on a property within the district.

*Kerr v. City of Bethlehem* (Pa. Cmwlth. No. 2249 C.D. 2007, filed June 26, 2008),[3] slip op. at 2 (emphasis added; footnote omitted). Pursuant to the Act, the Township appointed the Historical Architectural Review Board (HARB).

On January 19, 2022, Gillen submitted the Application to the Township, which, in turn, referred it to the HARB. In the Application, Gillen proposed the following work at the Property:

> Replace porch elements due to rotting handrails, split pillars, and worn floorboards; add a stair rail and a ceiling. No change to fundamental building design; some details to change based on material availability and economy.
>
> Work to be done:

---

resource" in a "historic district" not otherwise designated as an individual "historic resource," absent evidence of any effect that the changes would have on the "general historic and architectural nature of the district."

Gillen Br. at 5 (footnote omitted). This Court has restated Gillen's issue for clarity.

[2] Act of June 13, 1961, P.L. 282, No. 167, *as amended*, 53 P.S. §§ 8001-8006.

[3] This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Kerr* is cited for its persuasive value.

- Replace porch floorboards and rim board with composite decking (gray/brown).

- Replace posts/pillars with [Polyvinyl Chloride] [(]PVC[)], polyethylene, or polyurethane, matching details as close as possible (white).

- Replace newel post with PVC, polyethylene, or polyurethane to coordinate with pillars, add ball top of same material (white).

- Reuse existing brackets or recreate them with PVC (white).

- Replace rails and balusters, including the stair rail, with composite component system offering similar visual impression from the street, e.g., traditional crown-top handrail (white).

- Re-create stairs previously removed; remove concrete stairs; create new footer and stringers (2x12), add composite treads and risers (gray/brown); add a composite rail on the left side to match the right (white).

- Add PVC beadboard ceiling to joists under the porch roof (largely invisible from the street; likely white but may paint). Wrap the main support beam with PVC (white).

Reproduced Record (R.R.) at 22.[4]

The HARB and its Historic Architectural Consultant, Carol Quigley (Quigley), reviewed the Application at a February 1, 2022 meeting, at which Gillen appeared. Quigley informed the HARB that the main support beam and the support post were the same dimension, which was a significant architectural feature. Quigley opined that cladding would destroy this relationship and, as a result, a defining porch feature would be lost. Quigley related that the exposed roof joists

---

[4] Gillen's Reproduced Record fails to comply with the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). However, for consistency, the citations herein are as reflected in the Reproduced Record.

3

were also a defining historic feature, and that covering them would hide that important architectural element. Thus, the HARB recommended that the Board approve the replacement elements but deny the beam cladding and ceiling installation.

On February 9, 2022, the Board's Building and Planning Committee (Committee) reviewed the HARB's recommendation, but deferred a decision on the Application for two weeks (until February 23, 2022) so Committee staff and Gillen could provide additional information. Although Gillen did not appear at the February 23, 2022 meeting, the Board and Greg Pritchard, the Township's Historic Resource Supervisor, discussed the Application. However, Gillen appeared when the Board met later in the evening of February 23rd, further discussed the Application, and voted to approve the Application's proposed replacement elements but to deny a certificate for the beam cladding and ceiling installation. Gillen appealed from the Board's partial denial to the trial court. On July 15, 2024, the trial court affirmed the Board's decision. Gillen appealed to this Court.[5,6]

Gillen argues that the Board erred by partially denying the Application absent evidence of the effect of the proposed modifications on the general historic and architectural nature of the Haverford Historic District. Specifically, Gillen contends that the Board may not deny her Application because her Property is a

---

[5] "When reviewing a trial court's decision in a local agency appeal, this [C]ourt's review is limited to determining whether constitutional rights were violated, an error of law [was] committed, or whether the agency's findings are supported by substantial evidence." *Gerbracht v. Fairview, Harborcreek, & Millcreek Twps. UCC Appeals Bd.*, 61 A.3d 1073, 1077 n.5 (Pa. Cmwlth. 2013).

[6] On May 21, 2025, Gillen filed with this Court a Praecipe to Attach Exhibits to the Brief of Petitioner and enclosed approximately 161 pages of documents, many of which were not included in the original record. "[This Court] will not consider documents attached to a brief or included in a reproduced record that were not part of the [original] record." *Pa. Dep't of Educ. v. Bagwell*, 114 A.3d 1113, 1120 (Pa. Cmwlth. 2015). Accordingly, this Court did not consider those documents that are not part of the original record.

4

*contributing resource* in a *historic district* not otherwise designated as an individual *historic resource*. The Township rejoins that Gillen's reference to the use of the terms *historic property* and *historic resource* is entirely misplaced. The Township maintains that its zoning and building codes regulate the use and demolition of individual properties that have significant historic value.

Initially, Section 4 of the Act provides, in relevant part:

**(a)** Any governing body shall have the power and duty to certify to the appropriateness of the erection, reconstruction, **alteration**, restoration, demolition[,] or razing of **any building**, in whole or in part, **within the historic district** or districts within the political subdivision. Any agency charged by law or by local ordinance with the issuance of permits for the erection, demolition[,] or alteration of buildings within the historic district shall issue no permit for any such building changes until a certificate of appropriateness has been received from the governing body.

**(b)** Any governing body in determining whether or not to certify to the appropriateness of the erection, reconstruction, **alteration**, restoration, demolition[,] or razing of a building, in whole or in part, **shall consider the effect which the proposed change will have upon the general historic and architectural nature of the district**. The governing body **shall pass upon the appropriateness of exterior architectural features which can be seen from a public street or way**, **only**, **and shall consider the general design**, **arrangement**, **texture**, **material**[,] **and color of the building or structure and the relation of such factors to similar features of buildings and structures in the district**. The governing body shall not consider any matters not pertinent to the preservation of the historic aspect and nature of the district.

53 P.S. § 8004 (bold and underline emphasis added).

This Court has explained:

> Section 4 [of the Act] . . . empowers the governing body to certify to the appropriateness of the erection, reconstruction, alteration, restoration, demolition[,] or razing of any building within the historic district or districts and prohibits the issuance of a permit for such changes until such a certificate shall have been issued. The same section requires the governing body in its determination of whether the certificate should issue to consider the effect of the proposed change on the 'general historic and architectural nature of the district[,]' and with respect to the building to consider only exterior architectural features which can be seen from the street but in this regard also to take into account 'the general design, arrangement, texture, material[,] and color of the building or structure and the relation of such factors to similar features of buildings and structures in the district.'

*First Presbyterian Church of York v. City Council of the City of York*, 360 A.2d 257, 258-59 (Pa. Cmwlth. 1976); *see also Park Home v. City of Williamsport*, 680 A.2d 835 (Pa. 1996).

Chapter 88 of the Township Code[7] (Chapter 88), titled "Historic Districts" addresses the establishment, administration, review, and regulation of historic districts. Section 88-6 of the Township Code, titled "Certificate of appropriateness required for issuance of building permits[,]" provides:

> The Director of Building and Planning of the Township shall not issue a permit for the erection, reconstruction, alteration, restoration, demolition[,] or razing of **any building** or installation of signs, in whole or in part, within the historic districts created by this article until the Board [] has issued a certificate of appropriateness. **The term "alteration" shall include exterior surface treatment to existing structures** (**i.e.**, **siding**, **a roof replacement**[,] **or other nonstructural exterior changes**).

---

[7] Lower Merion Twp., Pa., Code (Apr. 16, 1980). *See* https://ecode360.com/6528463 (last visited June 26, 2025).

6

Township Code § 88-6 (bold and underline emphasis added).

The law is well established that "where the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of construction." *In re Appeal of the Bd. of Comm'rs of Cheltenham Twp.*, 211 A.3d 845, 861 (Pa. 2019) (quoting *Mohamed v. Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1194-95 (Pa. 2012)). Similarly, "this Court may not add language to [an] [o]rdinance under the pretext of pursuing legislative intent." *Isaacs v. Wilkes-Barre City Zoning Hearing Bd.*, 612 A.2d 559, 561 (Pa. Cmwlth. 1992).

In determining whether the Board properly denied the Application in part, this Court considers the plain meaning and applicability of the words the General Assembly used in Section 4 of the Act and the words that the Township used in Section 88-6 of the Township Code. Those provisions apply to "alterations" to "any building" in a historic district, 53 P.S. § 8004(a)-(b), Township Code § 88-6, if such alterations "can be seen from a public street or way[.]" 53 P.S. § 8004(b). Chapter 88 defines *alteration*, *see* Township Code § 88-6, but does not define the term *building*. However, the Township Zoning Code (Chapter 155 of the Township Code) defines *building*[8] as: "Any structure having a solid roof intended for shelter or enclosing of persons, animals, personal property, vehicles[,] or equipment, excluding freestanding tents and awnings." Township Code § 155-2.1. It is beyond cavil that the enclosing of exposed roof joints supporting the open porch are "exterior

---

[8] The Township Code defines **historic building**, in relevant part, as:

> Any complex physical construction and its appurtenances with historic, and/or cultural, and/or archaeological, and/or scientific significance, as listed on the Historic Resource Inventory, which is a combination of materials assembled in an enclosed configuration, created in whole or in part to shelter primary forms of human activity, and which is permanently affixed to the land. . . .

Township Code § 88-1.1 (referencing Township Zoning Code § 155-2.1).

7

surface treatment to existing structures (i.e., siding, a roof replacement or other nonstructural exterior changes)." Township Code § 88-6.

Gillen provides no argument or support for her conclusion that her home is not a *building* under either the Act or Chapter 88. Further, the record evidence establishes that the proposed alterations "can be seen from a public street or way[.]" 53 P.S. § 8004; *see* R.R. at 33. Accordingly, Gillen's proposed alterations are subject to the Act and Chapter 88.

Section 88-9 of the Township Code provides:

> In determining the counsel to be presented to the Board [] concerning the issuing of a certificate of appropriateness authorizing a permit for the erection, reconstruction, alteration, restoration, demolition[,] or razing of all or a part of any building or installation of signs within the [Haverford Historic D]istrict, the Board shall consider the following matters:
>
> A. **The effect of the proposed change upon the general historic and architectural nature of the district**.
>
> B. **The appropriateness of exterior architectural features which can be seen from a public street or way only**.
>
> C. **The general design**, **arrangement**, **texture**, **material**, **scale**, **mass**[,] **and color of the building or structure and the relation of such factors to similar features of buildings or structures in the district**.

Township Code § 88-9 (emphasis added).

Gillen asserts that the Board failed to consider the "effect of the proposed change on the general historic and architectural nature of the district." 53 P.S. § 8004(b). However, the Committee-prepared "Issue Briefing" upon which the Board relied stated with respect to the proposed wrapping of the porch beam:

> The relationship of the porch post to the perimeter beam can vary in different types, styles[,] and eras of porch detailing. In this example, the width of the post is equal to

8

the width of the beam (approx. 4") and **this post-to-beam relationship is characteristic of this delicate porch style**, **and is distinct from other types of porch detailing**, **including classical examples that include a capital on the porch columns or contemporary suburban detailing of suburban porches in which the beam dimension has little or no relation to the post**. The addition of 3/4" Azek[9] (x 2 = 1.5" = nearly 40% of the 4" post) **would significantly alter the proportional relationship between post and beam and would follow a detail often included in suburban porches that is <u>inappropriate to this historic element</u>**. [Gillen] has suggested that the goal is to protect the existing beam. Members of the HARB noted that the beam is primarily protected by the roof and eave, and maintaining the roof and preventing any leaks from saturating the beam is the best means of continuing its preservation. Further, if the beam is wrapped, not only does it alter the characteristic visual relationship of the two porch components, but if water does infiltrate the porch assembly, moisture could be trapped between the new Azek wrap and the existing beam, allowing the beam to deteriorate behind the wrap and eventually fail. In this way, the beam is not protected by the proposed wrapping at all, but instead is made more vulnerable. The HARB saw no aesthetic, functional, or preservation need or reason to wrap the beam and voted to recommend denial of this component of the [A]pplication.

R.R. at 31-32 (bold and underline emphasis added).

With respect to the proposed placement of new material over the porch ceiling, the Committee recommended:

The proposed installation of new beaded board was recommended for denial for two reasons: the application of a continuous beaded board ceiling on the face of the rafters **would eliminate the historic porch detail of the exposed rafters that is visible from the street**, creating a closed roof assembly that is distinctly different from the light and decorative exposed rafter assembly that is present. Second, and consistent with the concerns at the perimeter beam noted above, the application of a ceiling

___
[9] Azek is a brand of cellular PVC composite.

9

> to the underside of the rafters would provide an opportunity for any moisture that may penetrate the assembly to become trapped within the rafter bays and accelerate deterioration of all components of the obscured assembly.

R.R. at 32 (emphasis added). At the February 23, 2022 meeting, the Board voted to follow the Committee's recommendation.

The Committee-prepared "Issue Briefing" reflects that the Board considered "[t]he effect [] the proposed change [will have] upon the general historic and architectural nature of the district[,]" Township Code § 88-9A; "[t]he appropriateness of exterior architectural features which can be seen from a public street or way only[,]" Township Code § 88-9B; and "[t]he general design, arrangement, texture, material and color of the building or structure and the relation of such factors to similar features of buildings and structures in the district." Township Code § 88-9C.[10] Specifically, the Board concluded that "**the addition of**

---

[10] This Court affords deference to agency interpretation of statutes and ordinances.

> Th[e] principle of granting deference to administrative agency interpretations of the statutes or regulations they are charged with administering has been reaffirmed repeatedly by this and our Supreme Court. . . .
>
> The Pennsylvania Supreme Court also has applied this principle to local administrative agencies as well. In *Colville v. Allegheny County Retirement Board*, . . . 926 A.2d 424 ([Pa.] 2007), the administrative agency's interpretation of a section of the county's retirement legislation it administered was in dispute based on the agency's interpretation of the word "within" to mean "before the end of." *Id*. at . . . 430. Our Supreme Court, citing *Winslow-Quattlebaum* [*v. Maryland Insurance Group*,] 752 A.2d 878 (Pa. 2000)], stated that we "afford great deference to the interpretation" of an administrative agency "overseeing the implementation of such legislation." *Colville*, . . . 926 A.2d at 430 (quoting *Winslow-Quattlebaum*, . . . 752 A.2d at 881).

*Turchi v. Phila. Bd. of License & Inspection Rev.*, 20 A.3d 586, 593 (Pa. Cmwlth. 2011).

10

**3/4 [inch] Azek . . . would follow a detail often included in suburban porches that is <u>inappropriate to this historic element</u>**." R.R. at 31 (bold and underline emphasis added).

This conclusion is further supported by Committee Chairperson Joshua Grimes' statement at the February 23, 2022 meeting:

> [T]he fact is, is that when our . . . HARB has recommended, with the advice of a preservation expert that this be preserved, and we've established that it can be seen, regardless of whether you need an eagle eye or not . . . , then it ought to be respected, because if we don't respect it, we chip and chip and chip away at th[e Haverford H]istoric [D]istrict [un]til it doesn't exist anymore. And frankly, forget about it doesn't exist on paper, it has no value in terms of its uniqueness.
>
> And respectfully - and I think this was said - some of these differences may have been created before the [Haverford Historic D]istrict was created because none of these historic districts are uniform. The one in Gladwyne - the Gladwyne Acme is in the Gladwyne Historic District. And that is non-contributing but that doesn't mean there isn't value to the rest of th[at] district - the parts that are historic.
>
> So, I would suggest - and with respect to [] Gillen - where this [B]oard has the ability to preserve an aesthetic element of this [P]roperty and uphold our rules and where our advisory board has asked that we do that, I think it's incumbent upon us to vote to deny the changes that would change the character of the [P]roperty.

R.R. at 76-77. Accordingly, the Board properly denied the relevant portion of the Application.

For all of the above reasons, the trial court's order is affirmed.[11]

_____
ANNE E. COVEY, Judge

---

[11] Gillen also argues to this Court in her brief that the Township denied her due process. However, Gillen did not raise that issue before the trial court nor include it in her Statement of the Questions Involved.  The law is well established that "an issue is waived unless it is preserved at every stage of the proceedings." *In re Se. Pa. Transp. Auth. Motor Vehicle Fin. Responsibility Law Int. Litig.*, 996 A.2d 1099, 1102 n.1 (Pa. Cmwlth. 2010).  Further, "[i]ssues not included in the Statement of [the] Questions [Involved] are waived and need not be considered by the Court even if they are addressed in the argument section of the brief." *Kalmeyer v. Mun. of Penn Hills*, 197 A.3d 1275, 1279 n.1 (Pa. Cmwlth. 2018).  Accordingly, Gillen has waived her due process argument.

Gillen also contends that "the [] [r]ecord provided by [the] Township did not include a complete and accurate record of the testimony taken[.]"  Gillen Br. at 23.  Gillen did not raise that issue in her Statement of the Questions Involved.  Therefore, that issue is similarly waived. *See Kalmeyer*.

Maura A. Gillen, :
               Appellant :
                     :
       v. :
                     :
Board of Commissioners : No. 1063 C.D. 2024
Township of Lower Merion :

## O R D E R

AND NOW, this 27th day of June, 2025, the Montgomery County Common Pleas Court's July 15, 2024 order is affirmed.

_____
ANNE E. COVEY, Judge